UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES T. SULLIVAN, etc., et al.  )
                                 )
        Plaintiffs,               )
                                 )   Case No. 09 C 2329
                                 )
   v.                            )   Judge Elaine E. Bucklo
                                 )
                                 )   Magistrate Judge
                                 )   Arlander Keys
                                 )
ALPINE IRRIGATION COMPANY        )
                                 )
        Defendant.                )

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Citation Respondents' Motion to Quash Citations to Discover Assets. For the reasons set forth below, the motion is granted in part and denied in part.

### Background

Plaintiffs James T. Sullivan, etc., et al. (collectively "the Fund") brought suit under the Employee Retirement Income Security Act (ERISA) and the Labor Management Relations Act (LMRA) to confirm an arbitration award created by virtue of a collective bargaining agreement. On June 1, 2009, the district court entered a judgment in favor of Plaintiffs and against Defendant Alpine Irrigation Company (Alpine) in the amount of $85,079.58. To satisfy the judgment, Plaintiffs initiated supplementary proceedings to discover Defendant's assets.

On January 4, 2010, the Fund issued a Citation to Discover

Assets on Alpine. Alpine produced documents in response and its President, Robert F. Zeh, appeared on March 25, 2010, for a citation examination. During the deposition, Robert stated that Alpine had been housed in his Plainfield, Illinois, home. (Robert Zeh Dep. at 5-6.) The company had ceased doing business in summer 2009 because Robert's son, Jeffrey Lee Zeh, had no interest in running the business. (*Id.* at 19.) During the last two years of the company's life, it had no employees. (*Id.* at 15.)

Robert indicated that Alpine owns a 1995 Dodge Ram, 1995 Ford Econoline van, and two used pipepullers. (*Id.* at 9-10, 26, 27.) Though it had at one time possessed a 1996 Honda Civic, Robert purchased the car from Alpine in summer 2009 for $460; he used his personal checking account to pay for the vehicle but was unsure what happened to the payment after it reached Alpine. (*Id.* at 25-26.) When asked about the remaining property listed on the Federal Asset Report which accompanied Alpine's 2007 U.S. Corporation Income Tax filing, including the used trencher and tractor, Robert responded that he was unaware of what had happened to the equipment. (*Id.* at 12-14.) He stated, however, that Jeffrey would know what had become of the tools. (*Id.* at 13-17.) Additionally, though Robert was certain that the rototiller had been sold, he did not know to whom, but again asserted that Jeffrey would be able to provide this information.

(*Id.* at 14.)

Robert also maintained that Jeffrey would have more information about the disposition of a 2005 Ford Econoline van as well as the equipment (including a 2001 Ford F450) listed on the Federal Asset Report which accompanied Alpine's 2008 U.S. Corporation Income Tax filing. (*Id.* at 18, 26-27.) His son was more knowledgeable of the tools' locations because he had been more involved in the company's day-to-day operations. (*Id.* at 18, 21.) Robert clarified this by asserting, "I filed the taxes and the tax deposit and then when [Jeffrey] came in the office, he wanted to do it on the computer." (*Id.* at 21.) The responsibility for securing and proposing bids was Robert's, though, at some point, Jeffrey assumed these tasks. (*Id.* at 21-22.)

Robert stated that Jeffrey had been an officer of Alpine more than twenty years ago, but as of 2008, Robert was the sole officer of the company. (*Id.* at 17, 24.) Additionally, Jeffrey, while an employee at Alpine, "ran a crew." (*Id.* at 8, 14.) Though Robert was unsure where Jeffrey resided, he stated that, sometime after Jeffrey left Alpine, he began working at Running Waters Irrigation (RWI). (*Id.* at 15-16.)

On April 9, 2010, the court clerk issued a third party citation to discover assets to Jeffrey. He appeared for a citation examination on June 8, 2010. He stated that he resides

at 24501 Renwick in Plainfield, Illinois. (Jeffrey Zeh Dep. at 6.) At the time of the deposition, he had been President of RWI - an irrigation company - for a little more than one year; the company is housed in his home. (*Id.* at 6-7, 43.) It has five employees, three of whom (including Jeffrey) are former Alpine employees. (*Id.* at 42-43.) RWI also services some of Alpine's former customers. (*Id.* at 46.) Jeffrey is also the owner, President, and sole shareholder of JV, a company incorporated in Delaware. (*Id.* at 22-23.) The company does not have a telephone and he was uncertain of its physical address. (*Id.*)

Jeffrey stated that, immediately before starting RWI, he was employed by Alpine - a company that installed and serviced underground lawn sprinklers. (*Id.* at 7-9, 14-15, 42.) He began his employment with Alpine as a crew member, but was later promoted to the position of crew leader; he remained in this role until he left Alpine after learning that the business was closing its doors. (*Id.* at 8-9, 14.) His crew had between three and four employees, depending on the job; there were five to six employees total at Alpine. (*Id.* at 10.) In addition to being an employee, he was, at one time, an officer of Alpine, though he was unsure of the title of the position that he actually held. (*Id.* at 11-12.) Notwithstanding documentation to the contrary, Jeffrey stated that he was never a shareholder, let alone the lone shareholder, of Alpine. (*Id.* at 12, 25.)

Jeffrey indicated that he sometimes did bid work at Alpine and also had some involvement in the company's closing. (*Id.* at 11-12, 15.) Specifically, he provided input on what equipment should be sold. (*Id.* at 15-17.) When asked about the company's assets, Jeffrey indicated that he was unsure of the whereabouts of the used trencher, tractor, rototiller, printer, computer, power tamper, and surveyor; he believed that Robert would be able to provide more information about their locations. (*Id.* at 17-18, 20-21.) The 1996 Honda Civic that was owned by Alpine had been sold to Robert; the 1995 Dodge Ram was parked at the Renwick property. (*Id.* at 26-28.) Jeffrey went on to state that certain equipment, including the power tamper, had been abandoned in a farm at his home and the Wells Cargo covered trailer, 2005 cargo van, 2001 Ford F-450 truck, 1995 Ford Econoline van, and Belshe trailer had been sold to JV Equipment Leasing, LLC (JV). (*Id.* at 18-22, 24-25, 28-31.) JV then leased the purchased items to RWI. (*Id.* at 26.)

Third party citations to discover assets were served on JV and RWI on October 8, 2010. Both citations sought information concerning:

   (1)  contracts and other arrangements with Judgement Debtor, or with any shareholder of Judgment Debtor, entered into within the last 4 years;

   (2)  loan agreements, promissory notes and security agreements;

   (3)  deeds and other written evidence of transfers of

5

> real estate or other property interest to or from
> Judgment Debtor or any of its shareholders;
>
> (4) ledgers or records reflecting (i) amounts due and
> owing to Judgment Debtor or any of its
> shareholders, (ii) amounts paid to Judgment Debtor
> or any of its shareholders, and (iii) any
> invoices, payments, or amounts in dispute with
> Judgment Debtor or its shareholders;
>
> (5) corporate resolutions, minutes, financial
> statements, tax returns or any other document
> evidencing ownership or investment interest of
> Judgment Debtor or any of its shareholders in
> Running Waters Irrigation, Inc.;
>
> (6) contracts or agreements regarding any trust
> including but not limited to land trusts, and any
> intellectual property including patents,
> trademarks, and copyrights, in which Judgment
> Debtor or any of its shareholders has, had, or may
> have any interest;
>
> (7) joint or shared ownership and investment interests
> with Judgment Debtor or any of its shareholders in
> any business, corporation, partnership, joint
> venture, and/or sole proprietorship;
>
> (8) property sold to, or purchased or leased from,
> Judgment Debtor or any of its shareholders,
> including any documents of title pertaining to
> such property, dates of purchase or lease, and
> amounts paid.

## Discussion

A citation to discover assets initiates a supplemental proceeding governed by Federal Rule of Civil Procedure 69. Rule 69 provides that supplementary proceedings "to and in aid of judgment or execution must accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1). Illinois law allows a judgment creditor to examine a judgment debtor or

any third party who might hold the debtor's assets. 735 ILL. COMP. STAT. 5/2-1402; *see also* ILL. SUP. CT. R. 277.

To proceed against a third party "the record must contain some evidence showing that the third party possessed assets of the judgment debtor." *Pyshos v. Heart-Land Dev. Co.*, 630 N.E.2d 1054, 1057 (Ill. App. Ct. 1994)(citing *Lange v. Misch*, 598 N.E.2d 412, 415 (Ill. App. Ct. 1992)). However, "the judgment creditor does not need to have evidence of specific assets or income sought, it only needs a belief that the third party possesses assets of the judgment debtor." *Lorillard Tobacco Co. v. Can-Star (U.S.A.), Inc.*, No. 03 C 4769, 2005 WL 1935998, at *1 (N.D. Ill. Aug. 4, 2005) (citing *Regan v. Garfield Ridge Trust & Savings Bank*, 617 N.E.2d 818, 820 (Ill. App. Ct. 1993)("[A] 'fishing expedition' for assets *is* permissible in the context of an initial proceeding to discover assets, if it is based on a belief that such assets are in the third party's possession."))

If the judgment creditor discovers that the third party holds the judgment debtor's assets, the Court may order the third party to deliver the assets in order to satisfy the judgment. *See* 735 ILL. COMP. STAT. 5/2-1402(c). While § 2-1402 is to be liberally construed, the burden lies with the Fund "to show that the citation respondent[s] possess[] assets belonging to the judgment creditor." *Schak v. Blom*, 777 N.E.2d 635, 639 (Ill. App. Ct. 2002)(citing *Mid-American Elevator Co. v. Norcon, Inc.*,

679 N.E.2d 387, 390 (Ill. App. Ct. 2002)).

## I. Citations Regarding Alpine's Shareholders

Citation Respondents JV and RWI argue that citations issued by the Fund, to the extent that they seek information regarding Alpine's shareholders, exceed the scope of Illinois Supreme Court Rule 277.

Illinois Supreme Court Rule 277 allows a judgment creditor to issue a citation to discover assets to "the judgment debtor or any third party the judgment creditor believes has property of or is indebted to the judgment debtor." ILL. SUP. CT. R. 277(a). A citation to discover assets to a third party is permitted, but only as a means of discovering the assets of a judgment debtor, not those of a third party. *Newcourt Capital, USA, Inc. v. Rubloff Aviation Maintenance Servs., LLC*, No. 05 C 50002, 2009 WL 635486, at *3 (N.D. Ill. Mar. 11, 2009)(citing *Lorillard*, 2005 WL 1935998 at *7-8.)

In addition to seeking information about the assets of Alpine (the judgment debtor), the Fund, in its citations, targets those of Alpine's shareholders. While the former inquiry is allowed, the latter is not. In other words, the Fund is permitted to locate assets of Alpine, but it cannot use citations to ascertain the assets of a third party. This holding is not only faithful to the text of the statute, but also finds support in the court's ruling in *Newcourt Capital*, 2009 WL 635486. In

that case, the court found that the judgment creditors' requests for information regarding the judgment debtor's members and shareholders were "overly broad" Id. at *3. Specifically, the court held that, because the creditors sought "to discover assets of companies and individuals other than the Judgment Debtor, [the] production requests exceed[ed] the allowable scope of citations to discover assets under Illinois law." Id. Consequently, the creditors were ordered to, inter alia, remove the terms "members or shareholders" from their requests. Id. at *4.

Because the Fund, too, seeks to discover assets of an individual who is not the judgment debtor, namely, the judgment debtor's shareholders, the citations, to the extent they seek this information, are quashed.

## II. Citation Examination of RWI

Citation Respondents JV and RWI next assert that RWI's representative should not be required to appear for a citation examination because the company has no documents responsive to the requests and because its President, Jeffrey Zeh, has already been deposed.

The citation used to initiate supplementary proceedings "shall require the party to whom it is directed, or if directed to a corporation or partnership, a designated officer or partner thereof, to appear for the examination . . . concerning the

property or income of or indebtedness due the judgment debtor." ILL. SUP. CT. R. 277. Because there is nothing in the rule that allows for an examination only if a party is in possession of documents responsive to a request, the Court declines to quash the citation on this basis. Nor does the Court find particularly convincing, Citation Respondents' contention that the same questions previously asked, will again be posed to Jeffrey if he is ordered to appear for a subsequent examination. The Fund has represented that this is not the case, and there is nothing currently before the Court that would indicate otherwise. To be sure, while Jeffrey was initially deposed as someone with knowledge of Alpine's assets, the Fund now seeks to examine him in his role as President of RWI.

The motion to quash, as it relates to Jeffrey Zeh's citation hearing in the role of RWI's President is, therefore, denied.

### III. Supplemental Proceedings and Successor Liability

Citation Respondents JV and RWI argue that a supplemental proceeding is not the proper means of pursuing a successor liability claim. They assert that Plaintiff must instead file a complaint against them should this be the Fund's desired course of action.

As discussed *supra*, the law governing supplementary proceedings allows a judgment creditor to issue a citation to discover assets to a third party believed to be in possession of

the judgment debtor's assets. *See* 735 ILL. COMP. STAT. 5/2-1402; ILL. SUP. CT. R. 277. If the creditor discovers that the third party does, indeed, possess the debtor's assets, the Court may order the third party to deliver the assets to be applied in satisfaction of the judgment. 735 ILL. COMP. STAT. 5/2-1402(c)(3); *see also Kennedy v. Four Boys Labor Servs., Inc.*, 664 N.E.2d 1088, 1091 (Ill. App. Ct. 1996)(after the judgment creditor discover assets in the hands of a third party, the judge may order the party to deliver the assets to satisfy the judgment). Further, the Seventh Circuit has held that, while a successor corporation generally does not inherit its predecessor's liabilities, in those situations where it does, the assets of the third party may be treated as if they were the debtor's. *Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 419 F.3d 594, 599 (7th Cir. 2005).

The Fund argues that JV and RWI are successors of Alpine and that, consequently, the companies possess at least some of Alpine's assets. Since Illinois law allows a judgment creditor to use a supplementary proceeding to pursue the assets of the judgment debtor, and the Seventh Circuit has held that at least in certain situations, a judgment creditor is allowed to treat a third party's assets as those of the judgment debtor, it stands to reason that a supplementary proceeding is an appropriate means of discovering and pursuing, (if proper) successor liability.

Indeed, not only has the Seventh Circuit allowed judgment creditors to pursue successor liability claims in supplemental proceedings, but other Illinois courts have as well. *See, e.g., Kennedy*, 664 N.E.2d at 1089-1093; *Hoppa v. Schermerhorn & Co.*, 630 N.E.2d 1042, 1045-1046 (Ill. App. Ct. 1994).

Accordingly, the Fund is permitted to use supplemental proceedings to discover and potentially pursue its claim of successor liability against Citation Respondents JV and RWI.

## IV. Determination As to Whether Citation Respondents are Alpine's Successors

Citation Respondents JV and RWI steadfastly maintain that they are not responsible for Alpine's liabilities because they are not the company's successor.

Generally, companies that purchase assets of other companies do not assume their liabilities. *Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F. 2d 1323, 1325 (7th Cir. 1990)(quoting *Travis v. Harris Corp.*, 565 F.3d 443, 446 (7th Cir. 1977)). Illinois, however, provides four exceptions to this general rule. *Id.* at 1325-1326. In the context of ERISA, however, the Seventh Circuit has "imposed liability upon successors beyond the bounds of the common law rule." *Id.* at 1326. In that instance, successor liability will attach if: (1) the successor company had prior notice of the claim against the predecessor and (2) there has been a sufficient

continuity in business operations between the two companies. *Artistic*, 920 F.3d at 1327. JV and RWI contend that the elements are not met.

The first element - notice - "can be proven not only by pointing to facts that conclusively demonstrate actual knowledge, but also by presenting evidence that allows the fact finder to imply knowledge from the circumstances." *Artistic*, 920 F.2d at 1329 (citing *Golden State Bottling Co., Inc. v. Nat'l Labor Relations Bd.*, 414 U.S. 168, 173, 94 S. Ct. 414, 38 L. Ed. 2d 388 (1973); *Nat'l Labor Relations Bd. v. South Harlan Coal Inc.*, 844 F.2d 380, 385 (6th Cir. 1988)). In *Laborers' Pension Fund v. Lay-Com, Inc.*, 455 F. Supp. 2d 773 (N.D. Ill. 2006), for example, the court found notice where the successor's officer was also an officer or director in the predecessor company.

The Court finds that JV and RWI had notice of the claim against Alpine. Robert testified that Jeffrey was very involved in the day-to-day operations of Alpine. Jeffery was so involved in the company that its President, Robert, was unable to answer many questions posed to him during his examination and had to, instead, defer to Jeffrey. Additionally, Jeffrey held leadership positions in all three companies. Specifically, he was an officer of Alpine, JV's President, sole shareholder, and owner; and the President of RWI. The notice requisite, therefore, is easily established.

The Court requires additional information, however, to make a determination on the second element - continuity in business operations. The Supreme Court has held that successor liability has set forth a multi-factor analysis for this element:

> This approach, which is primarily factual in nature and is based upon the totality of the circumstances of a given situation, requires that . . . the new company has "acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations. . . . Under this approach, the [court] examines a number of factors: whether the business of both employers is essentially the same; whether the employees of the new company are doing the same jobs in the same working conditions under the same supervisors; and whether the new entity has the same production process, produces the same products, and basically has the same body of customers.

The Court acknowledges Jeffrey's testimony that JV had purchased a trailer, two vans, truck, and trailer from Alpine. It is quite possible that this equipment is used by RWI to perform the same types of services that Alpine did, but because of the general nature of the equipment (they are not specific to irrigation), it is just as possible that they were not. Nor is it completely clear that the purchased assets represent substantially all of Alpine's former assets. The Court would be more convinced that JV had purchased the majority of Alpine's assets if, maybe, it had also purchased the pipepullers, trencher, tractor, and rototiller. However, the locations of at least some of the tools are unknown and the others have allegedly been abandoned at Jeffrey's house. Though he steadfastly

maintains that they are not being used by either of his companies, this assertion is questionable in light of the fact that he has been less than candid thus far. In fact, the Court has very real concerns about the credibility of both Robert and Jeffrey. Throughout both examinations, it was clear that the gentlemen were attempting to deceive. An obvious attempt at such is Jeffrey's testimony that he is unaware of RWI's business address, though he is the company's President, sole shareholder, and owner.

The Court is also not persuaded that Alpine's operations continued uninterrupted, or even without substantial change. It is clear that Jeffrey started RWI after leaving Alpine. What is not clear is whether Alpine remained in business during any period of time that RWI was also operating. Additionally, it is noted that over half of RWI's employees are former employees of Alpine. While it is probably safe to presume that they function in the same capacity at RWI as they did when working at Alpine, there is nothing besides speculation that would allow the Court to make this determination. Nor is there anything available that would allow a finding that RWI services all, or even a majority, of Alpine's former customers. Certainly, there is quite a difference between serving several of Alpine's former clients and providing services for a majority of them. Because of the fact intensive nature of the inquiry, this information is vital.

In light of the earlier ruling regarding discovery, the Court believes that the information required should be disclosed during Jeffrey's subsequent citation examination. While the Court, admittedly, has reservations because of concerns regarding Jeff's credibility, should the information not be made available, the Court will address it at a more appropriate time.

## CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part, Citation Respondents' motion.

Date: April 25, 2011        E N T E R E D:

*Arlander Keys*
MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT