IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES T. SULLIVAN, etc., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | No.     09 C 2329 |
| ALPINE IRRIGATION COMPANY, | ) | |
| an Illinois corporation, | ) | Judge  Elaine E. Bucklo |
| | ) | |
| Defendant, | ) | Magistrate Judge Arlander Keys |
| | ) | |
| and | ) | |
| | ) | |
| JV EQUIPMENT LEASING, LLC, and, | ) | |
| RUNNING WATERS IRRIGATION, INC., | ) | |
| | ) | |
| Citation Respondents. | ) | |

**MOTION FOR ENTRY OF JUDGMENT
AGAINST JV EQUIPMENT LEASING, LLC, AND
RUNNING WATERS IRRIGATION, INC.**

NOW COME Plaintiffs, JAMES T. SULLIVAN, etc., et al. ("Funds"), by their

attorneys, DOUGLAS A. LINDSAY, JOHN W. LOSEMAN,  RYAN M. HOLMES, and

BRIAN T. BEDINGHAUS, and with ROETZEL & ANDRESS, LPA, of counsel, move the

Court for the entry of judgment in favor of Plaintiffs and against Citation Respondents,

JV EQUIPMENT LEASING, LLC ("JVE"), and RUNNING WATERS IRRIGATION,

INC. ("RWI"), jointly and severally, in the amount of $83,607.61.  In support hereof,

Plaintiffs state:

**I.     Introduction**

RWI and JVE are the successors to Defendant, ALPINE IRRIGATION

COMPANY ("Alpine") and are liable for Alpine's debt to Plaintiffs.  RWI and JVE had

notice of Plaintiffs' claims against Alpine at all times, and there is substantial continuity

of Alpine's business in RWI and JVE. RWI and JVE opened shortly after Alpine closed,

out of the same business office, and under the same management. RWI performs the

same business services as Alpine, and JVE purchased substantially all of Alpine's

operable assets exclusively for RWI's use. RWI employs nearly all of Alpine's former

employees, who perform the same service as they did with Alpine to substantially all of

Alpine's former customers.

**II.**     **Successor Liability**

        The general common law rule is that a corporation that purchases the assets of

another does not assume liability for the seller's debts. *Upholsterers' International*

*Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1329 (7th Cir. 1990)

(citing *Travis v. Harris Corp.*, 565 F.2d 443, 446 (7th Cir. 1977)). The Seventh Circuit

recognizes an exception to the general rule in the context of ERISA actions to collect

delinquent benefit fund contributions. *Id*.; see also *Chicago Truck Drivers, etc. v.*

*Tasemkin, Inc.*, 59 F.3d 48, 49 (7th Cir. 1995). Successor liability should be imposed

when (a) the successor had notice of the claim against the predecessor and (b) there is

sufficient evidence of continuity of business operations between the successor and the

predecessor. *Artistic*, 920 F.2d at 1329. The successorship test is flexible and "emphasis

on the facts of each case as it arises is especially appropriate." *Tasemkin, Inc.*, 59 F.3d at

49 (quoting *Howard Johnson Co., Inc. v. Detroit Local Joint Exec. Bd.*, 417 U.S. 249,

256 (1974)). Successor liability will be imposed even when there appears to be an arm's

length purchase of assets. *Feinberg v. RM Acquisition, LLC*, 629 F.3d 671, 674 (7th Cir.

2011).

### III. There is sufficient evidence of continuity of business operations between Alpine and RWI/JVE

The Court has already determined that RWI and JVE had knowledge of Plaintiffs' claim against Alpine. *See Docket No. 37, p. 13.* The only question is whether there is a continuity of business operations between Alpine and JVE and RWI. In *Upholsterers' International Union Pension Fund v. Artistic Furniture of Pontiac*, the Seventh Circuit found continuity of business operations where the successor employed substantially all of the predecessor's workforce and supervisory personnel, had some of the same corporate officers, used the predecessor's machinery and equipment, manufactured the same products, completed the predecessor's work orders, and agreed to honor the predecessor's warranties. *Artistic Furniture*, 920 F.2d at 1329 (finding continuity of operations but remanding for determination of whether the successor had notice of the predecessor's liability).

In *Laborers' Pension Fund v. Lay-Com, Inc.*, the Seventh Circuit found continuity of business operations where the successor used the same business address and phone number, employed the same employees, retained one of the predecessor's officers, used the same equipment, and performed the same type of work for the same customers as its predecessor. *Lay-Com*, 455 F.Supp. 773, 782 (N.D. Ill. 2006).

In *Chicago Dist. Council of Carpenters Pension Fund v. Artistry Woodworking, Inc.*, the Court found continuity of business operations where the successor was managed by the predecessor's president and owner, operated out of the same warehouse as the predecessor, employed five of the predecessor's employees, leased all equipment and vehicles from the predecessor, and did business with several of the predecessor's former customers. *Artistry Woodworking*, 1997 WL 12794 *1 (N.D.Ill. January 10, 1997).

In *Central States, etc. v. Hayes*, the Court found continuity of business operations where the successor operated the same type of business as the predecessor, rendered the same services in the same manner as the predecessor, operated from the same business premises as the predecessor, employed the predecessor's employees in the same capacities, used the predecessor's trucks, and delivered its produces to most of the predecessor's customers. *Hayes*, 789 F.Supp. 1430, 1436 (N.D.Ill. 1992).

Our case is similar to *Artistic Furniture*, *Lay-Com*, *Artistry Woodworking,* and *Hayes*. RWI and JVE opened at or around the time that Alpine closed, and they operate out of the same business premises and under the same management as Alpine. RWI employs nearly all of Alpine's former employees, who use some of the same equipment to do the same type of work as Alpine for substantially all of Alpine's former customers. In short, RWI and JVE picked up right where Alpine left off.

**A. RWI and JVE opened at or around the time that Alpine closed**

Alpine closed between January 1, 2009, and July 1, 2009. Although Jeffrey Zeh ran Alpine's day-to-day operations from his home address, he could not pinpoint when Alpine closed. *See Jeffrey Zeh Citation Exam Transcript, Exhibit A, p. 6, 9, 14; see also Robert Zeh Citation Exam Transcript, Exhibit B, p. 21-22.* Robert Zeh, Jeffrey's father and purported owner of Alpine, testified that Alpine shut down in the summer of 2009. *Exhibit B, p. 19.* But Alpine had six employees at the end of 2008, and none in 2009.[1] *See Employer's Contribution and Wage Reports, Exhibit C.* In other words, Alpine had effectively closed at the end of 2008.

---

[1] According to Alpine's 2009 Employer's Contribution and Wage Reports, Alpine paid a total of $2,000 to its owner and sole officer, Robert Zeh. *See Exhibit C.*

RWI began operating in April, 2009.  Jeffrey Zeh testified that he went directly to RWI after leaving Alpine.  *Exhibit A, p. 15.*  He incorporated RWI on April 1, 2009.  *See RWI Articles of Incorporation, Exhibit D.*  RWI's earliest invoices are dated in April, 2009.  *See Exhibit 5 to RWI/JVE Citation Exam Transcript, Exhibit E.*[2]  Jeffrey organized JVE as a Delaware limited liability company on May 1, 2009.  *See Delaware Department of State: Division of Corporations online detail entry for JV Equipment Leasing, LLC, Exhibit F.*

Any period of inactivity, if any, between Alpine's closing at the end of 2008 and the date RWI opened is understandable.  Lawn irrigation work is seasonal.  *Exhibit E, p. 43.*  There is no irrigation work at all during the winter months.  *Id.*  Work starts back up again in the spring when the ground thaws.  *Exhibit E, p. 44.*

**B.      RWI and JVE operate out of the same business premises and under the same management as Alpine**

Jeffrey Zeh managed and controlled Alpine.  According to Alpine's corporate income tax returns, Jeffrey was an officer and the sole owner of Alpine.  *See Alpine's 2007 and 2008 Federal Income Tax Returns, Schedule E: "Compensation of Officers," Exhibit G.*  Jeffrey was at one time an officer of Alpine, but he denies owning Alpine.  *Exhibit A, p. 11-12, 25.*  Regardless of the accuracy of the tax returns, Jeffrey ran Alpine's day-to-day operations.  *Exhibit B, p. 18, 21-22.*  Jeffrey bid work for Alpine and managed Alpine's only crew of irrigation employees.  *Exhibit A, p. 8-11; see also Exhibit B, p. 14.*  Jeffrey owned and resides at the property at 24501 W. Renwick, Plainfield,

---

[2] Exhibit 5 to Exhibit E lists RWI's paid invoices, sorted by customer name, for the years 2009 and 2010. *See Exhibit E, p. 69-70.*

Illinois, where Alpine was located.[3]  *Exhibit A, p. 6, 33-34*.  When Alpine needed a loan in 2006, Jeffrey put up his home as collateral.  *Exhibit A, p. 33*.  When Alpine was closing, Jeffrey was instrumental in determining what would happen to Alpine's tools and equipment.  *Exhibit A, p. 15-16*.  Robert Zeh did not know what happened to Alpine's assets and repeatedly deferred all questions to Jeffrey.  *Exhibit B, p. 13-15, 17, 26-27*.  When Jeffrey opened JVE and "purchased" Alpine's assets, it was Jeffrey who orchestrated the transfer of funds from JVE's Harris Bank account to Alpine's Harris Bank account.  *Exhibit E, p. 17-20; see also Exhibit 1 to Exhibit E.*

Jeffrey is also the sole owner and officer of RWI, and he is the sole owner and manager of JVE.  *Exhibit E, p. 6; see also Exhibit A, p. 23.*  Like Alpine, RWI and JVE operate out of Jeffrey's home address (24501 W. Renwick), using the same office and storage space as Alpine.  *Exhibit E, p. 11; see also Exhibit A, p. 7; see also p. 7 of Exhibit 2 to Exhibit E ("Master Equipment Lease").*  Even the office furniture is the same. *Exhibit E, p. 12-13.*

**C.     RWI performs the same work as Alpine to substantially all of Alpine's former customers**

RWI's business is the same as Alpine's business.  Alpine serviced and occasionally installed underground lawn irrigation systems.  *Exhibit A, p. 8*; *see also 7/5/2006 letter from Robert Zeh to Illinois Department of Buildings, Exhibit H*.  RWI services and occasionally installs lawn irrigation systems.  *Exhibit E, p. 9, 72; see also Exhibit 5 to Exhibit E.*[4]

---

[3] The property at 24501 W. Renwick includes Jeffrey Zeh's home and three barns, which are used for storage and office space.  *Exhibit E, p. 9-10.*

[4] RWI's invoices are categorized by "service," "install," or "other."  *Exhibit E, 69-72*.  According to RWI's list of invoices, the vast majority of RWI's work is service:  just 12 of RWI's 370 jobs in 2009 were installations, and just 4 of its 406 jobs in 2010 were installations.  *See Exhibit 5 to Exhibit E.*

Most notably, nearly *all* of RWI's customers are former Alpine customers. Jeffrey was able to identify just two RWI customers in all of 2009 and 2010 that were *not* previously Alpine customers.[5] *Exhibit E, p. 72-85.* After admitting that RWI and Alpine service the same customers, Jeffrey explained that he went after Alpine's customers because they knew him as the one who took care of their accounts when he was with Alpine, and he knew they needed service work. *Exhibit E, p. 84-85.* Jeffrey may attempt to distinguish *his* Alpine customers from *his father's* customers, but that doesn't help his case either: of Alpine's 147 different customers in the 3rd and 4th quarters of 2008, 126 of them were RWI customers in 2009 and 2010. *See Alpine Deposit List, 2008 Q3 and Q4, Exhibit I; see also Exhibit 5 to Exhibit E.* Substantially all of Alpine's customers became RWI customers. *See Exhibit J.*[6]

### D.    RWI hired substantially all of Alpine's former employees to do the same type of work

In the two years prior to closing at the end of 2008, Alpine employed six employees: Jeffrey Zeh, Jesus Favela, Ricky Delgado, Pedro Herrera, Jose Guererro, and Vicki Rooney. *Exhibit C.*[7] Vicki Rooney was Jeffrey's fiancée and did office work for Alpine. *Exhibit E, p. 51-52, 85.* Favela, Delgado, Herrera, and Guerrero formed Alpine's crew of irrigation service employees. *Exhibit A, p. 10-11.* Jeffrey was "in charge" of the crew. *Exhibit A, p. 9.*

Of Alpine's six employees, only Jose Guerrero did not make the transition to RWI. Jeffrey is, of course, the sole owner and officer of RWI. *Exhibit E, p. 6.*

---

[5] Jeffrey Zeh identified "Bitzer" and "Joniak" as RWI customers that were not former Alpine customers. *Exhibit E, p. 75, 77.*

[6] Exhibit J contains a chart comparing Alpine's customers in the 3rd and 4th quarters of 2008 (compiled from Exhibit I) with RWI's customers in 2009 and 2010 (compiled from Exhibit 5 to Exhibit E).

[7] Alpine did not produce Contribution and Wage Reports for 2007 Q1 or for 2008 Q1 and Q3.

Jeffrey hired Favela, Herrera, and Delgado to do irrigation service work for RWI. *Exhibit E, p. 39-44; see also RWI Contribution and Wage Reports, Exhibit K.* Jeffrey also hired Vicki Rooney to do office work for RWI. *Exhibit E, p. 51.* They all report to Jeffrey as RWI's only officer.

The only RWI employees who were not previously employed by Alpine are Armando Herrera, Cailin Rooney, Erin Rooney, and Ryan Zeh. *Exhibit E, p. 40.* All of these employees were hired by RWI more than a year after Alpine had closed, and all have connections to Alpine. Cailin and Erin Rooney worked only briefly in RWI's office in 2010 and are Vicki Rooney's daughters. *Exhibit K, see also Exhibit E, p. 52; see also Exhibit A, p. 43-44.* Ryan Zeh began working for RWI in 2011 and is Jeffrey's college-age son. *Exhibit E, p 41; see also Exhibit K.* Ryan works only part-time doing various jobs just to make some extra money. *Exhibit E, p. 41.* Armando is related to Pedro Herrera and started working for RWI after March, 2010. *Exhibit E, p. 40; see also Exhibit K.*

### E. RWI uses the same vehicles and equipment as Alpine to do the same work

In May, 2009, JVE purchased the following equipment from Alpine for a total cost of $16,800.00:

- 2005 Ford E-250 van
- 2001 Ford F-450
- 2002 Wells Cargo trailer
- 1986 Vermeer LM35 pipe puller
- 1995 Ford E250 van
- 1984 Belshe trailer.

*Exhibit E, p. 17-18; see also May, 2009, Harris Bank statements for JVE and Alpine, Exhibit M.* JVE leased all six pieces to RWI over a 5-year lease term for $3,370.00 per

year, which is one-fifth of the amount JVE paid Alpine for the equipment.[8]  *Exhibit E, p. 14-15, 36; see also "Master Equipment Lease," Exhibit 2 to Exhibit E,*  The annual rental fee is JVE's only income, which Jeffrey claims on his personal tax returns.  *See Schedule C "Profit or Loss from Business" from Jeffrey Zeh's 2009 and 2010 Federal Income Tax Returns, Exhibit L.*  The equipment not purchased was abandoned at the 24501 W. Renwick property.  *Exhibit E, p. 18-19.*

The fact that JVE did not purchase *all* of Alpine's equipment does not mean that RWI's business was different in any way from Alpine.  It appears that the abandoned equipment simply wasn't operable.  Robert testified that the only equipment Alpine owned (*ie*. did not sell) were two pipe pullers, worth less than $100.  *Exhibit B, p. 10.*  Robert testified that "nobody wants them.  They are old."  *Exhibit B, p. 10.*  Jeffrey also did not seem to believe Alpine's abandoned property had any value:

> Q (Brian T. Bedinghaus).     As I understand Alpine had another pipe puller that JV did not purchase; is that correct?
>
> A (Jeffrey Zeh).     Correct.
>
> Q.     Do you know where the pipe puller is?
>
> A.     All that junk is still sitting there.
>
> Q.     At the barn?
>
> A.     Uh-huh.
>
> Q.     Is it broken?  You called it junk.  Does it not work?
>
> A.     Yeah, I don't think --  I don't know.  It hasn't – I haven't looked at it in  -- since what, 2008.  There is some other

---

[8] Jeffrey Zeh testified that his attorneys advised him to create JVE to own the assets used by RWI, so that creditors would not be able to reach the assets if RWI got sued.  *Exhibit A, p. 44-45.*  RWI itself does not own any vehicles, trailers, or equipment, and it does not lease any from anyone other JVE.  *Exhibit E, p. 34-35.*

> stuff there too that I keep asking to get rid of. It has been
> abandoned.

*Exhibit E, p. 22.* When asked why he has not yet gotten rid of Alpine's abandoned

equipment on his property, Jeffrey stated "I'd love to get rid of it . . . I was going to junk

it, scrap it . . . Hoping you guys would take it." *Exhibit E, p. 30.* The fact that Alpine had

some equipment that was old and inoperable is not surprising, as Alpine has been in

business since 196. *Exhibit B, p. 6.*

### IV.    RWI and JVE are the successors to Alpine under the NLRB standard as well

The Supreme Court, in *Fall River Dyeing & Finishing Corp. v. N.L.R.B.*, noted

that the National Labor Relations Board ("NLRB") uses a similar multi-factor test for

continuity of business operations in the context of unfair labor relations cases:

> Whether the business of both employers is essentially the
> same; whether the employees of the new company are
> doing the same jobs in the same working conditions
> under the same supervisors; and whether the new entity
> has the same production process, produces the same
> products, and basically has the same body of customers.

*Fall River Dyeing*, 482 U.S. 27, 43 (1987). In *Fall River Dyeing*, the successor acquired

most of the predecessor's real property, machinery and equipment, and much of its

inventory and materials. *Id*. at 44. The same employees worked on the same machines

and under the direction of the same supervisors as the predecessor. *Id*. The Court noted

that "[a]lthough the successor abandoned converting dyeing in exclusive favor or

commission dyeing, this change did not alter the essential nature of the employees' jobs,

because both types of dyeing involved the same production process." *Id*. The Supreme

Court affirmed the NLRB's finding that Fall River was a successor to its predecessor and

had a duty to bargain with its employees' union, even though the successor purchased the

predecessor's assets "on the open market" and did not commence its business until 7 months after the demise of the predecessor. *Fall River Dyeing*, 482 U.S. at 42-54. See also, *Steinbach v. Hubbard*, 51 F.3d , 846 (9th Cir. 1995) (substantial continuity found to exist where successor firm kept same employees, operated out of the same office, and provided same services).

There is sufficient continuity of business operations from Alpine to RWI and JVE under the NLRB test outlined by *Fall River Dyeing*. As already illustrated, RWI and JVE opened at approximately the same time or shortly after Alpine closed. RWI's business is identical to Alpine's business, and it services nearly all of Alpine's customers. JVE and RWI operate out of the same location as Alpine and under the same management. RWI employs all but one of Alpine's employees. RWI's employees use some of the same equipment and vehicles as they did when they were with Alpine.

In addition, RWI and JVE do their banking at the same bank (Harris Bank) as Alpine. *See Alpine, RWI, and JVE Harris Bank statements, Exhibit M.* RWI and JVE use the same accountants and attorneys as Alpine. *See Exhibit E, p. 63; see also Exhibit G; see also March 22, 2010 letter from Brian M. Dougherty responding to the Citation to Alpine, Exhibit N; see also Appearance of Brian M. Dougherty for RWI and JVE, Docket No. 26.* RWI uses the same insurance carrier as Alpine (Allied Insurance). *See Alpine's 2008 cash disbursement journal and check copies, Exhibit O;*[9] *see also Exhibit E, p. 52-53.* Jeffrey Zeh even uses the same credit card for RWI that he used to make purchases for Alpine. *Exhibit E, p. 61.*

---

[9] Exhibit O contains Alpine's cash disbursement journal entries for portions of July, August, and September, 2008, with entries for "Allied Insurance" in each month. Exhibit O also contains copies of the corresponding checks to Allied Insurance.

**V.**     <u>**Conclusion**</u>

There is sufficient evidence of continuity of business operations from Alpine to RWI and JVE. RWI and JVE commenced doing business at approximately the same time that Alpine closed or shortly thereafter, and they operate out of the same business premises and under the same management. RWI employs Alpine's former employees to do the same work for the same customers, using some of the same equipment and vehicles that were purchased from Alpine by JVE and leased to RWI. RWI and JVE also use the same banks, attorneys, accountants and insurance carriers as Alpine. Together, RWI and JVE are Alpine dressed up in new clothes, and they are liable for Alpine's debt to Plaintiffs.

As of November 14, 2011, the outstanding judgment balance due from Alpine is $83,607.61, which includes principal of $82,755.13 and interest of $852.48. Interest accrues at the rate of 0.49% per annum on the remaining principal amount of the judgment and at the current per diem rate of $1.11.

WHEREFORE, Plaintiffs/Judgment Creditors, JAMES T. SULLIVAN, etc., et al., request that the Court enter Supplemental Judgment in favor of Plaintiffs, JAMES T. SULLIVAN, etc., et al., and against JV EQUIPMENT LEASING, LLC, and RUNNING WATERS INRRIGATION, INC., jointly and severally; in the amount of $83,607.61.

JAMES T. SULLIVAN, etc., et al., by their attorneys, DOUGLAS A. LINDSAY, JOHN W. LOSEMAN, and BRIAN T. BEDINGHAUS

/s/ Brian T. Bedinghaus
Brian T. Bedinghaus
20 N. Clark Street
Suite 3200
Chicago, IL 60602
(312) 580-1269

OF COUNSEL:
ROETZEL & ANDRESS
20 N. Clark Street
Suite 3200
Chicago, IL 60602
(312) 580-1200

13

## CERTIFICATE OF SERVICE

I served copies of the foregoing MOTION FOR ENTRY OF JUDGMENT AGAINST JV EQUIPMENT LEASING, LLC, AND RUNNING WATERS IRRIGATION, INC. upon:

Brian M. Dougherty
Goldstine, Skrodzki, Russian
Nemec and Hoff, Ltd.
835 McClintock Drive, 2nd Floor
Burr Ridge, Illinois 60527
bmd@gsrnh.com

via the electronic filing (ECF) system of the United States District Court for the Northern District of Illinois as a result of electronic filing made this 14th day of November, 2011.

In accordance with 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: November 14, 2011


  /s/ Brian T. Bedinghaus
Brian T. Bedinghaus



ROETZEL & ANDRESS
20 North Clark Street
Suite 3200
Chicago, IL 60602
312.580.1200